# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| AKA ENTERPRISES, INC., *et al.*, | : | Case No. 3:16-cv-00082 |
| | : | |
| Plaintiffs, | : | District Judge Walter H. Rice |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| HARTZELL PROPELLER, INC., | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

This case concerns damage to an aircraft engine and which party must bear the cost of its repair. Plaintiff AKA Enterprises, Inc. (AKA) is the owner and operator of a 1999 Piper PA 46-350P aircraft (the Aircraft). AKA and its insured, Plaintiff National Union Life Insurance, allege that Defendant Hartzell Propeller, Inc. damaged the Aircraft's engine during its attempt to service and repair it. This allegedly forced Plaintiffs to incur repair costs and related expenses to the tune of over $250,000.00. Plaintiffs claim in their Complaint that Hartzell is liable to them under theories of negligence and breach of express and implied warranty.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Hartzell's Motion to Dismiss (Doc. #9), Plaintiffs' Memorandum in Opposition (Doc. #12), Hartzell's Reply (Doc. #15), and the record as a whole.

## II.     Factual Background

Reviewing the Complaint in light of Hartzell's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to accept its well-pleaded factual allegations as true, construe it in Plaintiffs' favor, and draw "all reasonable inferences" in Plaintiffs' favor. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). Doing so, the Complaint takes flight as follows.

On or around August 22, 2013, AKA arranged for Hartzell to make certain repairs to the Aircraft's Hartzell propeller. After Hartzell completed its work, AKA flew the Aircraft from Hartzell's facility. "During the flight, AKA noticed anomalies in the engine parameters and promptly notified Hartzell …." (Doc. #1, *PageID* #3). Rather than again flying the Aircraft, AKA directly transported it to a "reputable maintenance operation," *id.*, for inspection. "The aircraft maintenance operator performed an inspection and notified the engine manufacturer who later dispatched a service representative to inspect the aircraft." *Id.*

A representative from the engine manufacturer inspected the engine using a borescope and "discovered foreign object damage to the compressor blades of the engine …." *Id.* The manufacturer's representative concluded that the Aircraft was not airworthy.

The engine was then removed from the Aircraft and sent to the manufacturer where further examination revealed metal fragments in the engine. The source of the engine damage was a stainless-steel cotter pin, "a component of the propeller … linkage group." *Id*. "Testing and further investigation of the engine and its components, accessories, and hardware concluded that the damage caused to the engine occurred during the time the Aircraft was being repaired by Hartzell," according to Plaintiffs. *Id*. at 4.

AKA alleges that it paid $54,863.00 for service to and repair of the damage to the Aircraft's engine that Hartzell caused. Plaintiff National Union Life Insurance's Complaint seeks to recover the total sum, $197,945.07, it paid on AKA's (its insured's) behalf to repair the engine and to rent a substitute engine for the Aircraft while its original engine was repaired.

### III. Discussion

#### A. Negligence and Ohio's Statute of Limitations

Hartzell seeks dismissal of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). Beginning with Plaintiff's negligence claim, Hartzell contends that it is barred by Ohio's two-year statute of limitations for claims of negligent damage to property (the Aircraft's engine). Hartzell asserts that this claim accrued when the damage to the Aircraft's engine occurred during the work it performed on August 22, 2013. Plaintiffs' negligence claim is therefore untimely, according to Hartzell, because the two-year-limitations period ended on August 22, 2015, and Plaintiffs filed their Complaint well after this (in March 2016).

"The statute of limitations defense 'may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the complaint that the time limit for bringing the claim has passed.'" *Korn v. Paul Revere Life Ins. Co.*, 238 F. App'x 109, 111–12, 2007 WL 1892077, at *2 (6th Cir. 2007) (quoting, in part, *Hoover v. Langston Equip. Assoc., Inc.,* 958 F.2d 742, 744 (6th Cir. 1992)).  In this diversity-jurisdiction case, Ohio law applies to determine the length of the statute of limitations and when a claim accrues. *See Bowden v. City of Franklin, Kentucky*, 13 F. App'x 266, 274, 2001 WL 670059, at *5 (6th Cir. 2001) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980)) (other citations omitted).  Ohio's two-year statute of limitations applies to Plaintiff's negligence claim arising from alleged damage to the Aircraft's engine.  *See* Ohio Rev. Code 2305.10(A); *see also Twee Jonge Gezellen, Ltd. v. Owens-Illinois, Inc.*, 238 F. App'x 159, 162, 2007 WL 2141929, at *2 (6th Cir. 2007); *Reed v. Vickery*, No. 2:09-CV-91, 2009 WL 3276648, at *2 (S.D. Ohio Oct. 9, 2009) (Kemp, M.J.; consent case) (and cases discussed therein).

  Hartzell's emphasis on the date alleged in the Complaint on which the damage to the engine occurred is in line with the general rule in Ohio that "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 167 (2002).  Yet, Ohio law also generally applies a discovery rule to the limitations period contained in Ohio Rev. Code § 2305.10, including the two-year limitations period applicable to claims of negligent damage to property.  *See Reed*, 2009 WL 3276648, at *2 (citing *Kay v. City of Cleveland*, No. 81009, 2003 WL 125280, at *4 (Ohio App. Jan. 16, 2003); *Twee Jonge Gezellen,*

4

*Ltd.*, 238 F. App'x at 162 (noting, "parties agreed that discovery rule applied to a wine producer's negligence claim")).

In several different contexts, the Ohio Supreme Court has explained, "Under the discovery rule, the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 495 (2006) (childhood-sexual-abuse case); *see Norgard v. Brush Wellman, Inc.*, 95 Ohio St. 3d 165, 167 (2002) (negligent exposure to toxic waste: "the discovery rule … provides that a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant."); *Collins v. Sotka*, 81 Ohio St.3d 506, 509 (1998) (wrongful-death case: "rather than adhere to the rigid application of a particular statute of limitations, we liberally interpreted the time of accrual of the cause of action until the plaintiff knew, or by the exercise of reasonable diligence should have known, that he or she had been injured by the conduct of the defendant."); *Melnyk v. Cleveland Clinic*, 32 Ohio St. 2d 198, 201 (1972) ("the negligent leaving of a metallic forceps and a nonabsorbent sponge inside a patient's body during surgery will toll the running of the statute of limitation upon that cause of action until such time as the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act."). The discovery rule thus "entails a two-pronged test—*i.e.*, discovery not just that one has been injured but also that the injury was 'caused by the conduct of the defendant'—and that a statute of limitations does not begin to run until both prongs have been satisfied." *Norgard*, 95

Ohio St.3d at 167 (quoting, in part, *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 86 (1983)).  In light of these cases, the statute of limitations began to run on Plaintiffs' negligence claim when they discovered, or in the exercise of reasonable diligence should have discovered, both the existence of engine damage and that Hartzell allegedly damaged the Aircraft's engine.

 The allegations in Plaintiffs' Complaint, when accepted as true, reveal that Hartzell damaged the Aircraft's engine on the date it attempted to service and repair it— on or around August 22, 2013.  This, however, is not when AKA first discovered the damage Hartzell had allegedly caused because the information available to AKA at that time did not provide a causal link between Hartzell and the engine problems.  This is particularly so when there were problems with the engine before Hartzell attempted to repair it on August 22.  Indeed, the Complaint alleges, "On or about August 22, 2013, AKA arranged for Defendant to make certain repairs to the Hartzell Propeller …."  (Doc. #1, *PageID* #3, ¶12).

 The first hint of a problem arose during the flight away from Hartzell's facility when "AKA notice anomalies in engine parameters …." *Id*. at ¶13.  Yet, the existence of these anomalies did not suggest that Hartzell had damaged the engine during its attempted repair on August 22.  Even if the flight occurred shortly after the attempted repair, without additional information, the anomalies in the engine parameters merely alerted AKA to their problematic presence.  Once AKA was alerted to the presence of these anomalies, it began to exercise due diligence to discover the source of the anomalies in the engine parameters.  Its first step was to notify Hartzell about the

anomalies. AKA then transported the Aircraft to "a reputable maintenance operation" where it was inspected by the maintenance operator and later by a representative of the engine's manufacturer. The result: AKA learned that the engine had "foreign object damage to [its] compressor blades …." *Id*. At this point, although AKA had more information about the source of the anomalies, and the Aircraft's resulting lack of airworthiness, *id*., it still lacked information about what the foreign object was and how it got into the engine.

      Hartzell contends that because the Complaint does not specify the dates of the investigation and testing of the Aircraft's engine and because Plaintiffs do not plead that they investigated their claims diligently, the Court should reject Plaintiffs' tolling argument. These contentions lack merit. In the face of Hartzell's 12(b)(6) Motion, Plaintiffs are entitled to the benefit of having all reasonable inferences from the Complaint drawn in their favor.

      Next, the engine was removed, sent to the manufacturer, and "torn down for further examination of the damage to the compressor blades." *Id*. This led to a new piece of information, noted by the engine manufacturer, that metal fragments were in the engine. Still, how these intruders found their way into the engine remained unknown. This is a reasonable inference because the Complaint next alleges that testing and further investigation of both the engine and the metal fragments identified the source of the damage to be "a stainless steel cotter pin; a component of the propeller's reversing interconnect linkage group." *Id*. It is not apparent, however, that the manufacturer immediately communicated these findings to either Plaintiff. Indeed, it took more testing

7

and investigation of the engine and its components, accessories, and hardware to connect Hartzell to the damage it allegedly caused "during the time the Aircraft was being repaired …." *Id*. at 4. Under the chronology set forth in the Complaint, this was the first time Plaintiffs had enough information to reasonably conclude that Hartzell had damaged the Aircraft's engine. The Complaint's version of the events further demonstrates that Plaintiffs were diligent in attempting to determine the cause of the anomalies in the engine parameters. There is no indication that in the exercise of reasonable diligence, they should have learned about the cause of the engine damage before all the rounds of testing and investigation (as described in the Complaint) concluded.

      Plaintiffs filed their Complaint on March 10, 2016. Given the extensive testing and investigation required to identify the source of the engine damage and its alleged connection to Hartzell's attempted repairs on August 22, 2013, it is reasonable to infer at the pleading stage of this case that Plaintiffs discovered, or should have discovered, both the existence of the engine damage and that Hartzell allegedly caused the damage to the engine within two years of filing this case.

      If, moreover, Plaintiffs' negligence claim is viewed as based on a latent defect, "the statute of limitations does not begin to run until (1) actual damage occurred and (2) the plaintiff can draw some relationship between the damage and …[the defendant's] conduct." *Allen v. Andersen Windows, Inc.*, 913 F.Supp. 2d 490, 507 (S.D. Ohio 2012). It is reasonable to infer from the allegations discussed previously that Plaintiffs could not draw some relationship between the engine damage and Hartzell's repairs until the final round of testing and investigation was completed. Because the Complaint suffices to

8

show that this occurred within two years of the date they filed their Complaint, the accrual test applicable to latent-defect negligence claims is satisfied.

Hartzell contends that three cases considered together demonstrate that the discovery rule does not rescue Plaintiffs' negligence claim from its statute-of-limitations bar. Each of Hartzell's cases is factually distinguishable from the present case.

Hartzell first relies on *Spriestersbach v. Ohio Edison* Co., No. 95CA006026, 1995 WL 641146, at *2 (Ohio Ct. App. Nov. 1, 1995), a case involving harm to cattle allegedly caused by voltage shocks from the defendant's electrical system. The Ohio Court of Appeals determined, "[T]he injuries from the cattle's exposure to the stray voltage occurred and manifested themselves in timely proximity to the exposure…. Appellants were admittedly aware of both the electrical problems and the resulting injuries; they simply may not have put the two together. This situation is not comparable to a latent disease, the symptoms of which may not be experienced for year, or a latent defect in a product, which is not detectable until well after the sale." *Id*. at *5. The present case is factually distinguishable because, unlike the plaintiffs in *Spriesterbach*, the allegations of Plaintiffs' Complaint are akin to the damage and causation problems in latent-product-defect cases. Here, the facts available to Plaintiffs about both the engine damage and Hartzell's role in causing the damage were not available to them until well after Hartzell's attempted repair on August 22, 2013. In addition, the presence of the intruding steel cotter pin in the Aircraft engine and the ensuing damage, unlike the more obvious voltage and electrical shock problems in *Spriesterbach*, was hidden within the engine and took extensive testing and investigation to discover.

9

Hartzell also relies on *Braxton v. Peerless Premier Appliance Co.*, 2003-Ohio-2872, 2003 WL 21291061, at *1 (Ohio Ct. App., June 5, 2003) where the plaintiff was injured by an exploding stove. In that situation, there was nothing hidden to the plaintiff, he was hurt "when he turned on his new stove." *Id.* The Ohio Court of Appeals found that he was "on notice" at the time of his injury that the defendant may be liable to him. Essentially, nothing significant was hidden from the plaintiff in *Braxton*, unlike the intruding cotter pin and Hartzell's connection to its presence in the Aircraft's engine. The facts alleged in Plaintiffs' Complaint, contrary to those in *Braxton*, did not place Plaintiffs' on notice of Hartzell's causative role in the engine damage until well after it occurred.

Lastly, Hartzell relies on *Allen v. Andersen Windows, Inc.,* 913 F.Supp.2d 490, 507 (S.D. Ohio 2012) (Frost, D.J.) where the Complaint definitively showed that the plaintiff did draw a relationship between the alleged defect in her windows and the defendant's conduct. *Id.* Here, the Complaint does the opposite: It shows that Plaintiffs were not aware of the connection between Hartzell and the damaged engine until after a period of tests and investigation.

Accordingly, Plaintiffs' Complaint does not plead out their negligence claim under Ohio's two-year statute of limitations.

    **B.**    <u>**Ohio's Product Liability Act**</u>

Ohio substantive law applies to Plaintiffs' claims in this diversity-jurisdiction case. *Hayes v. Equitable Energy Res. Co*., 266 F.3d 560, 566 (6th Cir. 2001).

Hartzell contends that Plaintiffs' claims of express and implied breach of warranty fail to state a claim for relief because they are abrogated by the Ohio Products Liability Act, Ohio Rev. Code § 2307.71(B).  Hartzell seeks dismissal of these claims with prejudice based on the futility, in Hartzell's view, of any effort by Plaintiffs to amend their Complaint to include a claim under the Ohio Products Liability Act or under Ohio's Uniform Commercial Code.

The Ohio Products Liability Act (OPLA) creates a claim or cause of action against manufacturers and suppliers in a variety of circumstances.   For example, a manufacturer may be liable under the OPLA when its "product in question was defective in manufacture or construction…, was defective in design or formulation…, was defective due to inadequate warning or instruction…, or was defective because it did not conform to a representation made by its manufacturer …." Ohio Rev. Code § 2307.71(A)(1) (internal citations omitted); *see* Ohio Rev. Code § 2307.71(A)(13) (defining "product liability claim").  The OPLA "abrogates all common law product liability claims or causes of action."  Ohio Rev. Code § 2307.71(B).

Plaintiffs' claims of breach of warranty are not abrogated by the OPLA because, although they are common law claims, they are not common law product liability claims. Plaintiffs point out that they "do not allege that the product itself was defective …." (Doc. #12, *PageID*# 85).  Review of Plaintiffs' Complaint confirms this.  In Count II of the Complaint, which sets forth their breach of express and implied warranty claims, Plaintiffs allege:

> 33. Hartzell expressly or impliedly warranted that the aircraft propeller *and the maintenance performed* were free of material defects, done in a professional, competent, and workmanlike manner, and that the Aircraft was safe for flight and that these warranties ran to Plaintiff AKA.

*Id*. (emphasis added).  These allegations concern the activity of maintenance, or as elsewhere indicated in the Complaint, the repair and service Hartzell performed on the Aircraft's engine.  These allegations do not focus on defective manufacture, design, or other activities the OPLA covers.  Count II further alleges that Hartzell is engaged in the business of maintaining, testing, troubleshooting, repairing, inspecting, and other activities concerning its aircraft propellers.  Plaintiffs allege that Hartzell performed "maintenance and inspections on the Aircraft and/or its systems, components, or assemblies."   (Doc. #1, *PageID* #7).  The Complaint's list of these activities, rather than manufacturing, design, or other activities covered by the OPLA, supports the conclusion that Plaintiffs' breach of express or implied warranty claims are not common law product-liability claims abrogated by the OPLA.

And Plaintiffs assert elsewhere in the Complaint that AKA arranged, in August 2013, for Hartzell to make "certain repairs" to the Propeller, and after the repairs were completed, "AKA noticed anomalies in the engine parameters …." *Id*. at 3.  Plaintiffs continue, "Testing and further investigation of the engine and its components, accessories, and hardware concluded that the damage caused to the engine occurred during the time the Aircraft was being repaired by Hartzell." *Id*. at 4.  These allegations, like the others mentioned above, do not concern product-liability activities the OPLA covers.

\* \* \*

Hartzell argues, with nautical accuracy, that the parties' briefs "leave a bit of a two-ships passing in the night impression as some of the claims Hartzell moves to dismiss are claims that Plaintiffs say they never asserted [*i.e.*, OPLA claims], and Plaintiffs now clarify (or perhaps recast) several aspects of their claims…." (Doc. #15, *PageID* #103). Because of this, Hartzell attempts to "flesh out the claims Plaintiffs are and are not asserting …." *Id*. The result: Hartzell argues that Plaintiffs' breach of implied warranty claim is a negligence-based claim that arises under Ohio tort law, not Ohio contract law. This is so, Hartzell reasons, because Plaintiffs contend in their Memorandum that Hartzell breached their duty to repair or service the Aircraft's propeller or engine in a workmanlike manner. Hartzell therefore equates Plaintiffs' breach of warranty claims with their negligence claim and seeks dismissal of all Plaintiffs' claims as time barred. Hartzell's Reply also requests that if the Court is unable to determine what claims Plaintiffs are or are not asserting, such uncertainty be grounds to treat their Motion to Dismiss a Motion for a More Definite Statement. *Id*. at 103-04, n.1.

Plaintiffs have not had an opportunity to respond to Hartzell's attempt to flesh out the claims set forth in the Complaint. Because of this and because Plaintiffs are the theoretical masters of their Complaint and because Count II of their Complaint combines at least two causes of action (Breach of Express and Implied Warranty, *id*. at 7) and seems to suggest others, treating Hartzell's Motion and Reply as seeking a more definite statement under Fed. R. Civ. P. 12(e) is warranted. In addition, although federal courts

13

sparingly grant motions for more definite statements, the confusing combination of theories Plaintiffs present in Count II and raise in their Memorandum render Count II vague enough to require a more definite statement.  This, moreover, will advance the fundamental goal of promoting a just, speedy, and inexpensive determination of this case. *See* Fed. R. Civ. P. 1.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendant's Motion to Dismiss (Doc. #9) be DENIED, in part, as to Count I of the Complaint;

2. Defendant's Motion to Dismiss (Doc. #9) be DENIED without prejudice to Count II of the Complaint and be GRANTED as to Defendant's request to construe it as a Motion for More Definite Statement; and

3. Plaintiffs be ordered to file a More Definite Statement as to Count II of their Complaint, to clarify whether they seek to raise one or more causes of action and to identify each cause of action in a short and plain statement of the claim.


December 6, 2016

s/ Sharon L. Ovington<br>Sharon L. Ovington<br>Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).